IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM B. OWENS, | ) |
| Plaintiff, | ) |
| v. | ) CV 98-PT-0795-E |
| SUPERIOR JEEP, EAGLE, CHRYSLER, PLYMOUTH, MAZDA, and CECIL C. CANNON, an individual, | ) |
| Defendants. | ) |

FILED
99 FEB -1 PH 1:46
U.S. DISTRICT
N.D. OF ALABAMA

ENTERED
FEB -1 1999

## MEMORANDUM OPINION

This cause comes to be heard on defendants' Motion for Summary Judgment filed on September 3, 1998.

### I. The Claim

On April 2, 1998, Plaintiff William B. Owens ("Owens") filed suit against defendants Morgan - Huckaby, Inc. d/b/a Superior Jeep, Eagle, Chrysler, Plymouth, Mazda ("Superior") and Cecil Cannon ("Cannon") alleging that he was terminated from his employment in violation of his rights under 29 U.S.C. § 2601, et. seq., more commonly known as the Family and Medical Leave Act (FMLA), 42 U.S.C.A. § 12102, et. seq., otherwise known as the Americans with Disabilities Act (ADA), and Alabama state law.[1] The claim arose out of an incident that occurred in May of 1997, wherein Owens claims that he was terminated by his employer, Superior, through its agent, Cannon, for attending a doctor's appointment during his recovery period following a heart attack. Owens' state law claims were dismissed by this court in April of 1998 in connection

---

[1] The plaintiff has never specifically named Morgan-Huckaby Automotive as a party. However, as will be later discussed, Morgan-Huckaby Automotive is the entity which did business as Superior Jeep, Eagle, Chrysler, Plymouth, Mazda. The defendant employer has appeared as Morgan-Huckaby, Inc.. It is not clear whether this appearance is for the new corporation, Morgan-Huckaby Automotive, Inc., created by merger in 1998 or whether it was intended to be an appearance for Morgan-Huckaby Automotive as it existed prior to the merger.

with a motion for summary judgment/dismissal filed by the defendants. The defendants now seek summary judgment on the remainder of plaintiff's claims.

## II. Factual Allegations[2]

From November 1, 1995 until May of 1997, Owens was employed full time at Superior as Secondary Finance Manager. In his role as Secondary Finance Manager, Owens sold vehicles to persons with credit problems, obtained credit for those persons, processed the necessary paperwork for such transactions, obtained names for mailings through bankruptcy records, showed cars to potential customers and did the related paperwork. On or about April 2, 1997, Owens suffered a "stress-related" heart attack, underwent surgery, and was subsequently on leave from work for approximately six weeks. Following the six weeks of recovery, Owens returned to his job at Superior. Owens continued to perform his former duties, but did so with the help of other Superior employees. Owens also worked on an abbreviated schedule, per his doctor's orders.

Following his return to work, Owens was to make scheduled visits to his doctor for the purpose of monitoring his condition and recovery progress. Owens reported the necessity and regularity of these visits to Superior management, including Cecil Cannon. The incident around which this action is centered concerns a visit scheduled for May 23, 1997. Owens alleges that, upon returning to work on May 16, 1997, he informed Cannon that he had a doctor's appointment scheduled for May 23, 1997. The May 23 date coincided with the last day of a used car sale at Superior. On the day of the appointment, Owens approached Cannon and told him that he was leaving to visit his physician. Cannon then informed Owens that he could either go to the doctor and lose his job or remain at work. Apparently, defendants had allowed plaintiff to keep other appointments. They asked him to reschedule this one because they were busy. Owens went to his appointment, and, upon returning to work, was told that he was terminated. Owens claims that the next time he heard from Superior was when he received a letter from Cannon dated May 20, 1997, indicating Cannon's regret to hear of Owens' "resignation."

At some point following the incident, Owens reported his termination to the Wage and Hour Division

---

[2] These "facts" are stated favorably to the plaintiff and may or may not be the actual facts. The court does conclude that certain facts are undisputed.

of the Department of Labor. On January 26, 1998, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that he was terminated in violation of the FMLA and ADA.

## III. FMLA Claim

Count One of Owens' complaint alleges that both Superior and Cannon violated his rights under 29 U.S.C. § 2601, et seq., the FMLA. Owens contends that the defendants required him to work an increased number of hours with the knowledge that he was suffering from a heart condition and that they refused to allow him to take time off from work to visit his doctor.

### A. Definition of "Employer" and "Eligible Employee"; 50 or More Employee Requirement

Superior and Cannon claim that Owens may not maintain an action against either of them under the FMLA because the FMLA protects only specifically defined "eligible employees," and applies only to certain employers who meet the definition of "employer" under the statute. Under 29 U.S.C. § 2611, "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees," is excluded from the statute's protection "if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C.A. § 2611(2)(B)(ii) (emphasis added). "Employer" is defined as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. . . " 29 U.S.C.A. § 2611(4)(A)(i). Hence, if a defendant does not have more than 50 employees, suit cannot be brought against it for violation of the FMLA. See e.g. Rich v. Delta Airlines, Inc., 921 F.Supp. 767 (N.D. Ga. 1996).

In his affidavit, then Superior President Pete Morgan claims that "Superior Jeep", at all relevant times to the present lawsuit, maintained less than forty employees – less than the fifty required to make Superior subject to suit under the FMLA. Superior thus asserts that Owens is not an "eligible employee" and Superior is not an "employer" as defined by the FMLA and that Count One of Owens' Complaint is due to be dismissed. Owens, however, maintains that Superior employs well over 50 persons and points to a report produced by the Department of Labor to support his claim. The report is allegedly the result of an investigation conducted by

the Labor Department as a result of Owens' complaint. In the report, the investigator for the Department of Labor asserts that Superior employed more than 50 employees in 20 or more weeks during both the 1997 and 1996 calendar years.[3]

Owens also claims that Superior knew it was subject to the FMLA as evidenced by the Superior employee handbook, which included FMLA material, and by Superior's posting of two FMLA posters at the business. Owens has cited no case law supporting an argument that such actions on the part of Superior would constitute a waiver subjecting Superior to the strictures of the FMLA, but seems, rather, to imply that Superior's posting of the materials and inclusion of FMLA materials in the handbook evidences Superior's acknowledgment that it was subject to the FMLA. Defendants claim that acknowledgment of the existence of the FMLA does not automatically subject a business to the requirements of the statute.

Owens claims to have completed a personnel change notice form in March of 1997 for his job as secondary finance manager. He has submitted a copy of that form. At the top of the form are boxes with the following dealerships' names: Superior Oldsmobile-Buick, Superior Nissan, Superior Jeep, Superior Mazda. A person filling out the form is to place a mark in one of the boxes indicating where he works. Owens contends

---

[3] Defendants have requested that the court strike the materials allegedly constituting the investigation of the U.S. Department of Labor on the grounds that the materials are not properly admissible on a motion for summary judgment or a response thereto. The investigation materials were not submitted as part of an affidavit and were not certified as a complete and accurate copy of the Wage and Hour Divisions's report regarding Owens' FMLA claim. Defendants claim that there is no way to determine the authenticity, reliability or completeness of the report and that it contains hearsay, double hearsay, unsubstantiated opinions and conclusory assumptions that violate the rules of evidence. Additionally, defendants claim that the report lacks "trustworthiness." In Beech Aircraft Corp. v. Rainey, 488 U.S. 531, 109 S.Ct. 439 (1988), the Supreme Court outlined the four factors relevant in determining whether evidence submitted under Federal Rule of Evidence 803(8)(c) (the public records exception) is "trustworthy": 1) the timeliness of the investigation; 2) the investigator's skill and experience; 3) whether a hearing was held; and 4) possible bias with an eye toward litigation. Defendants contend that all four factors weigh against the trustworthiness of the report in this case. First, the investigation took place over seven months after the alleged incident. Second, there is no evidence of the skill of the investigator. Third, no hearing was held. Finally, the investigator's comments indicate that he may have had an eye toward litigation. Defendants submit that one statement in an uncertified, unauthenticated investigative report is insufficient for Owens to overcome the affidavit testimony of Superior's President.

Owens, in response to defendants' motion, has offered to do whatever is necessary to authenticate the report, but suggests that the cover letter provided by the Department of Labor is sufficient authentication under FRE 901(b)(7). Owens also claims that the document is self-authenticated under FRE 902(1) and (2) as a domestic public document.

that the form amounts to a representation that Superior, as an entity, includes not only the Jeep dealership, but the others as well. Although he does not indicate how many employees are employed by Superior as a complete organization, Owens asserts that there is a factual dispute as to whether or not Superior employed more than 50 persons in the applicable time period. Superior characterizes Owens' claims as assumptions and speculation.

## IV. AMA Claim

Count Two of Owens' Complaint is directed solely against Superior. Owens claims that Superior discriminated against him because of his heart condition by requiring him to work more hours than allowed by his physician, by refusing to provide him with reasonable accommodations, such as a modified work schedule, and by terminating him when he left to attend a scheduled appointment with his doctor. Owens maintains that Superior's actions violated his rights under the ADA.

### A. The Timely-Filing Requirement

Superior first contends that Owens did not file his charge with the EEOC within the time period and according to the procedural requirements prescribed by law and that his allegations against Superior are time barred as a result. The procedures for filing a claim for discrimination under the ADA are set forth in 42 U.S.C.A. § 2000e-5[4], which provides as follows:

> (e) Time for filing charges, time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system.
>
> (1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge . . . shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

---

[4] The ADA incorporates the same filing requirements as Title VII, and Title VII precedent applies. See 42 U.S.C. § 12117(a).

42 U.S.C.A. § 2000e-5. Owens filed a Charge of Discrimination with the EEOC indicating that the alleged discriminatory acts took place on or about May 26, 1997. The Charge was stamped "Received" by the EEOC's Birmingham Office on January 26, 1998, approximately 245 days after the alleged incident. Superior alleges that Owens later received a Dismissal and Notice of Rights from the EEOC informing him that his charge against Superior had been dismissed <u>because it was not filed in a timely manner</u>.

There is no dispute that Owens filed his charge with the EEOC in January of 1998, which was well past the 180 day time limit set out in the statute. Superior asserts that this and other jurisdictions have held that the filing of a Charge of Discrimination with the EEOC is a "condition precedent and a jurisdictional prerequisite" to the filing of a discrimination lawsuit.[5] Owens argues, contrary to the defendants, that Zipes

---

[5] Superior cites Ross v. Buckeye Cellulos Corp., 980 F.2d 648, 662 (11th Cir. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 69 (1994)(holding that discrimination claims filed with the EEOC may be time barred if not filed within the 180 day time limit and if equitable tolling does not properly apply), Wright v. Butts, 953 F.Supp. 1352 (M.D. Ala. 1996)(holding that McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973), stands for the proposition that courts have jurisdiction over Title VII claims only after a plaintiff (1) timely files a charge of employment discrimination with the EEOC and (2) files suit within ninety days of the receipt of the EEOC's statutory notice of right to sue); Williams v. Hager Hinge Co., 916 F.Supp. 1163 (M.D. Ala. 1995); and Luna v. Walgreens, 888 F.Supp. 87 (N.D. Ill. 1995) to support its contention.

In Williams, the district court, in analyzing whether a plaintiff who failed to filed a discrimination complaint with the EEOC could seek relief in federal court, stated that:

> At the outset, the court notes that Title VII permits an aggrieved employee to seek relief in federal court only where the complainant (1) has filed timely charges of employment discrimination with the EEOC and (2) has received and acted upon the EEOC's statutory notice of the right to sue. 42 U.S.C. § 2000e-5(f)(1); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the discriminatory action of which he or she complains. EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110, 108 S.Ct. 1666, 1668-69, 100 L.Ed.2d 96 (1988) (citing § 706(e), 42 U.S.C. § 2000e-5(e)); see also 29 C.F.R. § 1601.13(a)(1). The Eleventh Circuit has held that failure to file charges with the EEOC within the 180 day time period results in a bar of claims contained in the untimely filed charge. Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 662 (11th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994); see also Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992 (11th Cir.1982); Durham v. Bleckley County School Sys., 680 F.Supp. 1555, 1558 (M.D.Ga.1988). Moreover, courts have specifically held the timely filing of an EEOC charge is a prerequisite to a civil action based upon either Title VII or the ADEA, and a plaintiff who fails to file a timely charge of discrimination is precluded from bringing a civil action because of a failure to exhaust his or her administrative remedies. Lorance v. AT & T Technologies, Inc., 490 U.S. 900, 903 n. 2, 109 S.Ct. 2261, 2264 n. 2, 104 L.Ed.2d 961 (1989)(Title VII); Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (Title VII); McBrayer v. City of Marietta, 967 F.2d 546, 547 (11th

v. Trans World Airlines, Inc., 455 U.S. 385 (1982), stands for the proposition that the timeliness of filing with the EEOC is not a jurisdictional prerequisite and that the provision granting district courts jurisdiction under Title VII does not limit jurisdiction to only those cases where an EEOC charge has been filed. Id.; 42 U.S.C. § 2000E-5(e). The Zipes court states that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," and characterizes the timely-filing requirement as a statute of limitations. Zipes, 455 U.S. at 393. As such, the Court recognized that the timely-filing requirement is, like a statute of limitations, subject to waiver, estoppel, and equitable tolling. Id. This court agrees that the filing of the EEOC charge is not "jurisdictional" in the strictest sense. An untimely filing, however, can result in a claim being barred.

Owens claims to have filed a timely complaint with the Wage and Hour Division of the Department of Labor and contends that such filing satisfied his responsibility to exhaust avenues of administrative relief and should toll the running of the EEOC timely-filing limit. Owens cites an ADA brochure which states: "In addition, since some private and governmental employers are already covered by nondiscrimination and affirmative action requirements under the Rehabilitation Act of 1973, EEOC, DOJ and the Department of Labor also will coordinate the enforcement effort under the ADA and the Rehabilitation Act."[6] He also stresses that, according to cases such as Pullman-Standard v. Swint, 456 U.S. 273 (1982) and Zipes, the anti-discrimination statutes are remedial in nature and that their procedural requirements should be construed liberally to effect that end.

---

Cir.1992) (ADEA); Calhoun v. Federal Nat'l Mortgage Ass'n, 823 F.2d 451, 455 (11th Cir.1987) (ADEA).
916 F.Supp. at 1172.

[6] As with the Department of Labor report, Superior has moved to strike the brochure due to lack of authentication. Superior points out that the brochure is not a certified copy of any document and has not been authenticated for the time period relevant to this case. Additionally, Superior asserts that the publication appears to be a summary of the law regarding the ADA and that, in order to ascertain the proper interpretation of the ADA, one should look to the United States Code Annotated rather than a summary. Superior's second assertion, however, may miss the point being made by Owens. Owens did not present the publication as a complete summary and explanation of the ADA, but only to show how persons could become confused as to where and how to file a discrimination claim.

The Eleventh Circuit has defined equitable tolling as "a type of equitable modification, which 'often focuses on the plaintiff's excusable ignorance of the limitations period and on [the] lack of prejudice to the defendant.'" Cocke v. Merrill Lynch & Co., [43 EPD P 37,145] 817 F.2d 1559, 1561 (11th Cir. 1987) (quoting Naton v. Bank of California, 649 F.2d 691, 696 (9th Cir.1981)). The appellate court has identified three circumstances in which the time limit for filing an EEOC complaint may be equitably tolled: (1) when a state court action is pending; (2) when the defendant has concealed an act supporting the Title VII cause of action; and (3) when the defendant has misled the employee regarding the nature of his rights under Title VII. Washington v. Ball, [52 LC P 39,533] 890 F.2d 413, 414-15 (11th Cir.1989). Owens cites Morgan v. Washington Manufacturing Company, 660 F.2d 710 (6th Cir. 1981) to support his contention that the timely-filing requirement should be tolled in this case. In Morgan, the Sixth Circuit dealt with a situation in which a complaint was forwarded from the White House to the Department of Labor and then on to the EEOC. Although the complaint reached the White House and Department of Labor prior to the running of the time limit, the EEOC received the report from the DOL ten days after the 180 day time limit. The court held that filing with Department of Labor tolled the 180 day period under certain circumstances, stating that:

> In the absence of prejudice to the defendant or a showing of bad faith or lack of diligence by a claimant, equitable considerations should toll the 180 day period for filing a complaint under Title VII when the claimant makes a timely filing with the federal agency, like the Labor Department, which has jurisdiction in some fields of employment discrimination and when that complaint is forwarded to the EEOC shortly after the time period expired.

Morgan 660 F.2d 710.

Owens claims the present situation is similar to that outlined in Morgan and that the Superior was not prejudiced by the delay in filing because it was put on notice when the Department of Labor conducted an on-site investigation and offered the employer a resolution. He claims to have diligently pursued a legal resolution to his wrongful termination and claims that he should not be penalized for filing a charge with the wrong federal agency. According to Owens, case precedent, equitable considerations, and the remedial nature of the ADA suggest that his failure to adhere to the 180 day time limit in filing an EEOC charge should not result in the barring of his claim.

Superior contends that the present case is easily distinguishable from Morgan. Superior notes that

there is no evidence indicating that Owens filed a complaint with the Department of Labor in a timely manner. The Labor Department's report does not state when Owens initially logged his complaint. The earliest date specified on the face of the report is December 15, 1997. Superior thus asserts that there exists no evidence showing that Owens filed even the Department of Labor complaint within the statutory time period. Superior also points out that Morgan involved a complaint that was filed in a timely manner with President Jimmy Carter's office, which then forwarded the complaint to the Department of Labor prior to the running of the statute of limitations. The Department of Labor then forwarded Ms. Morgan's file to the EEOC, which received it ten days after the statutory period. Superior contends that, in this case, there exists no evidence of the Department of Labor having forwarded any portion of Owens' file to the EEOC, and, even if it did so, such forwarding did not occur *shortly* after the expiration of the statutory period. Finally, Superior contends that it did suffer prejudice as a result of Owens failure to file his ADA claim in a timely manner. Because the complaint was filed so late, Superior claims that it was denied the opportunity to effectively investigate and, if necessary, rectify the alleged unlawful behavior. Thus, according to Superior, the present case is unrelated to the situation presented in Morgan.

Superior also points out that Owens' complaint filed with the Department of Labor was not an ADA claim, but an FMLA claim. Superior stresses that the two statutes are totally separate, consisting of different violations, requirements, procedures and remedies and that Owens has cited no precedent indicating that the filing of an FMLA claim with the Department of Labor tolls the statute of limitations for filing an ADA claim with the EEOC.

Under 42 U.S.C. § 2000e-5(e)(1), if an employee initially institutes proceedings with a state or local agency with the power to grant or seek relief, then the employee has 300 days from the date of the alleged violation to file a charge with the EEOC. Owens claims that his allegedly timely filing with the Department of Labor brings this provision into effect. However, the Department of Labor is not a state or local agency with the power to grant or seek relief under the ADA. Superior argues that Owens' case, therefore, does not fall under this exception to the statutory time period.

### B. "Disabled" Under the ADA

For a claimant to establish a prima facie case of discrimination, under the Americans with Disabilities

Act (ADA), the claimant must demonstrate that (1) he has a disability, (2) he is a qualified individual, and (3) he was discriminated against because of the disability. 42 U.S.C.A. § 12101 et seq.; Pritchard v. Southern Co. Services, 92 F.3d 1130, 1132 (11th Cir. 1996); Pouncy v. Vulcan Materials Co., 920 F.Supp. 1566 (N.D. Ala. 1996). Superior contends that Owens is not and was not "disabled" as defined in the ADA and, therefore, cannot seek protection under the Act. In order to establish such disability, a plaintiff must show that he has a physical or mental impairment which substantially limits one or more of his major life activities, has a record of such impairment, or is regarded as having such an impairment. 42 U.S.C.A. 12102(2). Evidence tending to indicate the presence of an impairment that limits life activities is a factual question as to "whether those symptoms substantially limited a major life activity." Pritchard, 92 F.3d at 1134.

Superior avers that Owens has failed to establish that he has any record of impairment, that he is regarded as having an impairment or that he has a physical impairment that substantially limits one or more of his major life activities and that he is not "disabled" under the ADA. The Department of Health and Human Services Regulations defines "major activity of life" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii), 45 C.F.R. § 605.3(j)(2)(ii), and 29 C.F.R. § 1630.2(h)(2)(i). A heart condition qualifies as a disability under the ADA if it substantially limits one or more major life activities. Wilson v. Georgia-Pacific Corp., 4 F.Supp. 2d 1164 (N.D. Ga. 1998); see also 29 C.F.R. § 1613.702(b)(1). Superior contends that Owens has failed to show that he has been substantially limited in any of the above pursuits and has, in fact, shown through his testimony that he was only minimally affected by the heart attack. Specifically, Superior points to regulations and case law holding that one is "substantially limited" with respect to "working" when one is:

> . . . significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working. . .

29 C.F.R. § 1630(2)(j)(3)(i), and Pritchard v. So. Co. Services, 92 F.2d 1130, amended, 102 F.3d 1118 (11th Cir. 1996), cert. denied, ___ U.S. ___, 117 SoCt. 2453 (1997).

Following his surgery, Owens was unable to lift any more than five to ten pounds with each arm and no more than thirty pounds total. He was no longer able, on his own, to lift the hoods of cars when showing

the vehicles to customers. He was also limited in his ability to work a full day and told to work no more than four to six hours in a given day. Immediately following his return to work, Owens was able to walk no more than 200 yards at a time. Within several weeks, however, he was able to walk two to three miles in a stretch with the help of a cane. He was also able to ride a stationary bike for periods of time. Owens apparently, at times, has difficulty concentrating due to his medication.[7]

Superior contends that Owens was able to continue with his job of selling and financing cars after his heart attack with little difficulty, while Owens contends that he was only able to fulfill his duties with the help of others. Following his employment with Superior, Owens was employed at Anniston Lincoln Mercury from July 1, 1997 through October 1, 1997. His duties and responsibilities were similar to those he had managed while at Superior. Owens voluntarily left his position at Anniston Lincoln Mercury allegedly due to high blood pressure caused by the stress of the job. As of July 22, 1998, Owens, although unemployed, "helped out" Phillip Booke, the owner of a car dealership known as Auto Village in Anniston. Owens worked two to three days a week, sometimes a whole day, sometimes a half, answering phones, doing title work, assisting customers and doing paper work. Superior thus claims that Owens is not and was not substantially limited in his ability to work in that he can still do the work he did prior to the heart attack, as evidenced by the assistance he has given Mr. Booke. Furthermore, Superior contends that there exists no evidence that Owens is significantly restricted from performing other jobs due to his heart attack and is, therefore, not prevented from performing either a class of jobs or a broad range of jobs. Owens has not, according to Superior, established that he is or was "disabled" according to the ADA definition. Owens, however, contends that while he was able to perform the essentials of his job with reasonable accommodations in the form of the aid of fellow employees, he was not able to perform such tasks without a degree of assistance. Owens argues that although he was able to perform his job, he was substantially limited in his ability to do so and was thus disabled.

Having a disability does not automatically extend the protections of the ADA. For a prima facie case, the complainant must show that he is a "qualified individual" with a disability. A "qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment

---

[7] Owens also notes that he is now receiving social security disability benefits. Superior argues that Owens must prove that he was disabled when terminated according to Pritchard, 92 F.3d 1130.

position that such individual holds or desires." 42 U.S.C. § 12111(8). The Supreme Court has held that a qualified employee is one who is able to satisfy all of the job's requirements, despite his disability. Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Owens contends that he is a qualified individual because, despite his disability, he is able to perform the essential functions of the employment with reasonable accommodation.

## V. Court's Conclusions

### A. FMLA Claim

Since the court could not tell from the evidence before it the basis for the Department of Labor investigator's assertion that Owens' employer employed more than 50 employees, the court scheduled and held a hearing to give the parties an opportunity to address the issue. The plaintiff did not, at the hearing, present any evidence which directly related to how the investigator arrived at his number. The court gave the plaintiff additional time to attempt to provide such evidence to the court. In response, the plaintiff has submitted a letter dated January 21, 1999 with attachments. The court will file these documents. The plaintiff has acknowledged that he "was not able to determine what method of inquiry he used in determining the number of employees and will not submit any further evidence as to that fact."

The court has examined the only "evidence" submitted by the plaintiff which purports to support the finding of the investigation. There is no such substantial evidence other than that offered at the hearing on January 13, 1999, that the investigator's "finding" is trustworthy. See footnote 3, *supra*; also see Barfield v. Orange County, 911 F.2d 644 (11th Cir. 1990). The suggestion of the plaintiff, and perhaps the investigator, that the defendant had posted two FMLA posters and given FMLA information in an employee handbook is not substantial evidence of the number of employees.

The court will summarize the evidence as presented at the January 13, 1999, hearing. The present entity known as Morgan-Huckaby Automotive, Inc. resulted from a merger, in January 1998 (after the date of any alleged violation in this case) of two corporations; Morgan-Huckaby Automotive and Calhoun Motor Company, Inc.. Calhoun Motor Company, Inc. was the earlier of the two, dating from the 1930's. Morgan-Huckaby Automotive was the successor to Superior Olds-Buick, Inc., which dated from about 1982 or 1983.

In late 1996, the assets of Superior Olds-Buick, Inc. were sold to Morgan-Huckaby Automotive, which continued as an automobile dealer. Plaintiff was employed, at all pertinent times, by either Superior Olds-Buick, Inc. or Morgan-Huckaby Automotive.

At the times pertinent to the alleged violation, Calhoun Motor Company, Inc. operated as an automobile dealership known as Superior Nissan. At the same times, Morgan-Huckaby Automotive operated an automobile dealership known as Superior Jeep, Eagle, Chrysler, Plymouth, Mazda.[8] At the pertinent times, Pete Morgan owned 60% of the stock of Morgan-Huckaby Automotive and 40% of said stock was owned by Mack Huckaby. At the pertinent times, Pete Morgan owned 53% of the common stock of Calhoun Motor Company, Inc. and Mack Huckaby owned 47% of said stock.

It is undisputed that, at the pertinent times, Morgan-Huckaby Automotive, plaintiff's employer, did not, standing alone, have enough employees to be an "employer" under the FMLA or for plaintiff to be an eligible employee under the FMLA. It is also undisputed that the combined employees of Morgan-Huckaby Automotive, Inc. and Calhoun Motor Company, Inc. did exceed 50 employees at all pertinent times.

Under 29 C.F.R. § 825.104(c)(2) and § 825.106, separate and distinct entities may be considered together in determining the number of employees if the employers meet the "integrated employer" test or if they are "joint employers." Having considered the factors relating to "joint employment", the court concludes that it is clear that the two pertinent entities (Morgan-Huckaby and Calhoun) were not "joint employers" of plaintiff.[9] There is no substantial evidence of "an arrangement to share or interchange an employee's services; or that one employer acted directly or indirectly in the interest of the other employer in relation to the employee; or that the employers shared control of the employee, directly or indirectly. Considering all pertinent factors listed in 29 C.F.R. § 825.106, in their totality, there was no joint employment.[10]

29 C.F.R. § 825.104(c)(2) lists the following factors to be considered with reference to the "integrated

---

[8] As indicated, Morgan-Huckaby Automotive and Calhoun Motor Company, Inc., merged in about January 1998. The name of the surviving corporation is, apparently, Morgan-Huckaby Automotive, Inc..

[9] Plaintiff has only argued for an "integrated employers" finding.

[10] The court will discuss the facts in more detail in connection with the discussion of the "integrated employer" test.

employer" test:

    (1) Common management;

    (2) Interrelation between operations;

    (3) Centralized control of labor relations; and

    (4) Degree of common ownership / financial control.

The regulation further provides that the determination is not to be made by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality.

The following factors may arguably weigh in favor of a determination of integrated employers in this case:

    (1) The two corporations had the same stockholders with the same stockholder having voting control of each of the corporations. There is, however, no evidence of the relative net worth or capital structure of the two corporations. For aught that appears, the relative stock values could be significantly different. The relative gross and net incomes of the two corporations could also be significantly different. Morgan's testimony indicates that Huckaby has gradually acquired stock ownership, first in Calhoun and later in Morgan-Huckaby.

    (2) The two employers used the same personnel form. Mr. Morgan stated that this was done in order to save printing costs. There is no evidence, however, that there was centralized control of labor relations.

    (3) The two employers sometimes held joint automotive sales at a common location. Such sales, however, also took place, not so often, with other dealers. If a sale of a Calhoun automobile was made by a Morgan-Huckaby salesperson, the commission was paid by Calhoun to Morgan-Huckaby for any further distribution by it. Sales commissions were not paid directly by Calhoun to Morgan-Huckaby salespersons. The same practice was followed if a Calhoun salesperson sold a Morgan-Huckaby automobile.

    (4) The two employers had common directors, but Morgan-Huckaby had only two directors, Morgan and Huckaby. Calhoun had three directors, two Morgans and Huckaby.

    (5) The two employers used the same type of personnel manuals.

The following are factors which militate against a determination that the two employers were integrated for the purposes of counting the number of employees:

(1) The two dealerships had separate general managers with separate hiring and firing authority. Neither employer would hire the employee of the other without the consent of both managers.

(2) The two employers maintained entirely separate payroll records with separate governmental identification numbers. They separately handled workers compensation, payroll deductions, unemployment insurance, etc. The two employers did not file any consolidated tax returns. All employee related returns were filed separately. For most of the applicable periods they had separate bookkeepers.

(3) Cecil Cannon, who had no managerial authority at Calhoun, made the decisions with regard to plaintiff. Plaintiff charges him with being the person who acted "in the interest of an employer in relation to [plaintiff]."

(4) There were separate offices, separate staffs, etc.

(5) there is no substantial evidence of an interrelation between the operations of the two entities. There is no evidence that plaintiff or other employees of Morgan-Huckaby Automotive did any regular work for Calhoun. Further, there was no common day to day management.

For further statements of the facts, etc., see court's statement on the record at the end of the January 13, 1999 hearing.

Plaintiff's own January 21, 1999 letter, filed by the court, notes substantial distinctions between the facts in Bruce v. S&H Riggers and Erectors, Inc., 732 F.Supp 1172 (N.D.Ga. 1990), cited by plaintiff and those here. Unlike the case here, in Bruce, the court stated:

In the case at hand, CDI and S&H shared offices. Plaintiff answered the telephone for both companies. Plaintiff was responsible for the payroll of both companies.

. . . Defendants maintain that plaintiff was employed solely by CDI and that CDI does not fall within the ADEA's definition of an employer.

. . . William J. Smith, President and Owner of S&H and CDI, wrote a letter of recommendation for Mrs. Bruce stating, "this letter of reference of [sic] Mrs. Dorothy Bruce is given because of her outstanding service to S&H Riggers and Erectors, Inc., in these past 3½ years."

> . . . Mr. Smith's testimony reveals that, even assuming Mrs. Bruce was employed by CDI, she performed many duties for S&H and for Mr. Smith in his capacity as S&H President.
>
> . . . William Smith is the 100% owner of CDI, CDI is the 100% shareholder of S&H. Smith is the president and CEO of both CDI and S&H.
>
> . . . As noted above, Mrs. Bruce performed considerable work for Mr. Smith in his capacity as S&H's President.
>
> . . . Evidently, however, Mr. Smith controlled the hiring and firing of CDI employees. And, in his letter of reference for Mrs. Bruce, he states that he terminated Mrs. Bruce's tenure as "Girl Friday" to S&H Riggers. A genuine issue of material fact thus remains as to whether Smith had control over the labor forces of both CDI and S&H.

Bruce, 732 F.Supp at 1174, 1176. Plaintiff has cited no other significant authority to support his position.

As indicated, the determination is to be made from a consideration of the relationship in its totality. Other than some common stock ownership there is no substantial evidence of integrated operations such as which could allow a reasonable trier of the facts to find that Morgan-Huckaby Automotive and Calhoun Motor Company, Inc. were integrated employers. The two businesses, except for some common sales events, operated as separately as any two businesses could. There is no indication in the regulations or the cases that in all instances where there are common stockholders owning stock in similar businesses, the businesses are to be considered integrated. 29 C.F.R. § 825.104(c) states, "Normally, the legal entity which employs the employee is the employer." Cannon, who made the decision, clearly had no control over Calhoun Motor Company, Inc. A finder of the fact would have to be prejudiced or unduly strain to find integrated employers. The court will dismiss the FMLA claims.

### B. ADA Claim

The first time that an ADA claim or charge surfaced was January 26, 1998, when an EEOC charge was filed. The EEOC dismissed the charge as being untimely filed. The EEOC charge, as such, was clearly untimely. Plaintiff, however, relies upon his having submitted some earlier grievance to the Department of Labor.[11] Plaintiff cites and relies upon Morgan v. Washington Manufacturing Co., *supra*. As distinguishable

---

[11] It is not clear when this was done. The plaintiff's complaint does allege a timely filing with the Department of Labor, but does not do so with any specificity. It does appear that plaintiff was interviewed by the Department of Labor on November 12, 1997, which was within the 180 day period.

from Morgan, there is no evidence here that the Department of Labor ever forwarded a complaint to the EEOC or that the EEOC in Morgan concluded that the charge was untimely filed. Here, an ADA claim was not mentioned in the Department of Labor proceeding. The Department of Labor records reflect, *inter alia*,:

> (1) Plaintiff did not want his job back. He wanted back pay from the date of termination to 11-12-97 (see Employee Personal Statement).
>
> (2) Plaintiff granted the Department of Labor his consent to use his name and his statement of 11-12-97, and to enforce his rights under "the Acts administered by the Wage and Hour Division of the Department of Labor."
>
> (3) The Department of Labor refers to an FMLA complaint. On an "Action Reporting Form", "Discrimination" is not checked.

The ADA charge apparently arose only after the plaintiff contacted an attorney in December of 1997. In Morgan, there was a 10 day delay in filing. Here, there was a 65 day delay before a first filing. There is no evidence that either the defendants, EEOC or the Department of Labor misled the plaintiff. In effect, plaintiff began as if he had an FMLA claim. He belatedly asserted an ADA claim. If the court allowed plaintiff to proceed, it would emasculate the intent and purpose of timely filing requirements of ADA claims. The ADA claim will be dismissed.

The court does not reach the merits of either claim. While the court is doubtful that Cannon can be held liable, as an individual, under the FMLA, the court does not reach that issue. See, however, Frizzell v. Southwest Motor Freight, Inc., 906 F.Supp. 441 (E.D.Tenn. 1995), and Freeman v. Foley, 911 F.Supp. 326 (N.D.Ill. 1995). But, also see Waters v. Baldwin County, 936 F.Supp. 860 (S.D.Ala. 1996).

Done this 15̄t day of February, 1999.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE